## SATER v. BURLINGTON AND MOUNT PLEASANT PLANK ROAD COMPANY.

The terms "just compensation," in the eighteenth section of the first article of the constitution of Iowa, are not ambiguous. They mean that the person whose property is taken, shall receive a fair equivalent, and be made whole.

In ascertaining what that compensation shall be, we see no more practical rule, than first to ascertain the fair marketable value of the premises over which the proposed improvement is to pass, irrespective of such improvement; and, also, a like value of the premises, in the condition in which they will be, after the land for the improvement has been taken, irrespective of the benefit which will result from the improvement, and the difference in value to constitute the measure of compensation.

But, in ascertaining the depreciated value of the premises, after deducting that part which has been taken for public use, regard must be had only to the immediate, and not remote, consequences of the appropriation. The value of the remaining premises, is not to be depreciated by heaping consequence upon consequence.

In such cases, the plaintiff may interrogate a witness generally, as to the value of the land before and after the appropriation; leaving to the opposite party, by cross-examination, to learn the ability of the witness to judge in the premises, and what he takes into consideration in making up his judgment.

And in case it should appear that such cross-examination, that the witness

assumed a false basis of computation of value—that in appraising the land left, he took into consideration remote consequences of the appropriation—it would be the duty of the court, especially on objection made, to inform the jury, that the estimate based upon such considerations must not be regarded by them.

Where it does not clearly appear from the record, that the evidence complained of, was drawn out in answer to any special interrogatory of the appellee, but it appears, inferentially, that it was drawn out by the appellant on cross-examination, the judgment will not be reversed, although the evidence may have been inadmissible.

*Appeal from the Lee District Court.*

THIS was a proceeding under a special statute, to recover compensation for the right of way over the land of the plaintiff, and comes up on the following bill of exceptions:

"Be it known that on the trial of this cause, evidence was given by the plaintiff tending to show, that the defendants had taken the right of way through plaintiff's farm to build their plank road upon, in quantity between five and six acres; that it passed through the cultivated part of his farm, about one hundred and fifty-five rods, and sixty feet wide; that it divided an orchard of one or two years growth;— that about forty trees were standing on the ground taken;— that it threw open the field, and passed diagonally through the farm, as shown by a diagram given in evidence to the jury as follows: [Here follows a copy of the diagram, not necessary to insert]; that there were several witnesses examined by plaintiff as to the damages sustained by the plaintiff; that plaintiff interrogated said witnesses as to the damages, and they did state before the jury a general sum of damages, which in their opinion, covered the inconvenience of plaintiff, by having the field thrown open, having to cross the road, and pass through two fences to get from one part of the farm to another; the awkward shape it left the farm and buildings; the danger of depredation upon the orchard; the inconvenience of plowing and cultivating the land left. The witnesses varied as to the actual value of the land, independent of the manner said farm was divided, stating variously the value to be from ten to thirty dollars per acre,

and assessing the damages variously from three to six hundred dollars. This evidence was all heard by the jury, but the court stated to the jury, as the witnesses severally testified, that they must not consider that part of the statement of the witnesses, which went to prove the incidental damages, as stated by the court in the final charge to the jury, which is as follows:

"This is a proceeding under a special statute, against the Burlington and Mount Pleasant Plank Road Company, to recover a damage, or a compensation, for five or six acres of land, taken and appropriated by said company, for the purposes of a plank road. In taking this land, the *company* is not deemed in law a trespasser or wrongdoer; but as appropriating the land in virtue of, or by authority, both of constitutional law, and legislative enactment. The law regards the plaintiff as assenting to its provisions, and willing to part with his land, for a just compensation, if taken for public uses, and the defendant as willing to pay him such compensation for the object proposed. This compensation must cover the entire and full value of the property taken, without any regard whatever to the benefits and advantages resulting to the plaintiff, by the construction of the road, on the one hand, and without any regard whatever, on the other hand, to the incidental injuries, the subsequent inconveniences and expenses in using and improving the land that is left, occasioned by the location and construction of said road. The establishment of this road through the plaintiff's land, undoubtedly has, and would, subject him to much inconvenience and extra expense in refitting up his farm, and adapting it to the road; and if the defendants, in contemplation of law, were wrongdoers, they would, and ought to be, responsible for injuries of this description, but they are not regarded in this light, and a different rule, I think, should be adopted; and that is, leaving them entirely out of your consideration in this proceeding, and considering them as settled, or set off by the benefits and advantages of the public improvement. It cannot be disguised, that these improvements do bestow advantages, and impart an additional value to the property through which

they pass; but the law of this state especially forbids, that the court or jury shall consider these advantages in awarding a just compensation for the property taken. In excluding from our consideration, these advantages, I think the law intends also to exclude from our consideration, the incidental inconveniences and injuries resulting to the property holder, and that in legal estimation, the benefits should stand off as a fair and just equivalent for the injuries.

"It is understood in a number of the states, that a different rule of practice obtains, where the jury and the court are to consider all the damages which the plaintiff, in cases of this kind, has sustained, including the value of the property taken, and, to deduct therefrom the advantages and benefits of the improvement; but in no case, it is believed, have the legislature, and the courts, gone so far as to make the companies constructing these improvements, pay not only the full value of the property taken, but also all the incidental inconvenience and damages which the party has sustained, without allowing anything for the benefits bestowed; this would be against natural justice.

"The true rule to be adopted, in the opinion of this court, and the one which is authorized by the language and terms of the constitution of the state, and the special statute law under which this proceeding is had, is to require the company to pay a fair equivalent for the property appropriated for the road. The language of the constitution is, a just compensation; that of the legislature, a fair equivalent for the property taken. It is true, afterwards, in the same law, the legislature, in defining the duty of the jury in ascertaining the value, use the words, 'assess the damages of the plaintiff.' The word damages, here, is evidently to be taken in a limited sense; not in the sense ordinarily applied to trespassers and tort feasors, but in the qualified sense expressed in the second section of the act—meaning a fair and full equivalent for the land taken. Then, what should be the criterion by which you should be governed in assessing this damage, or this compensation, which you are to give the plaintiff? I have adopted the rules and principles laid

down recently in the Supreme Court of the state of Tennessee, in the case of *Woodfolk* v. *The Nashville and Cattanooga Railroad Company*, as commending itself to the practical good sense of every business mind. The quality, the place where it lies, the form or manner in which it is taken, with reference to intrinsic circumstances, such as the effect it would have on the intrinsic value of that which is left—the awkward shape it would leave the remainder in for cultivation—whether it embraced any of the permanent improvements, or buildings, or the orchard—these, and like circumstances, must enter into the estimate in fixing the value. The market value of lands at the time, by the quarter or half section, would not be the true criterion. No business man would sell a few acres from his farm, on the same terms that he would sell the whole farm; nor would he sell a strip through the farm, on the same terms that he would sell the same quantity on the outer line of his farm; and in determining this matter, you are to make an application of your common sense; look at it in a business, practical point of view, without which the controversy cannot be properly adjusted, and with which you cannot go very wide of the truth, and the demands of justice. It is one of those questions which it is peculiarly the province of a jury to settle, and which they can settle better than any court in the world, and which is very properly referred to your determination.

"That the defendant objected to such evidence being given to the jury, but the court admitted the inquiry to be made, saying that he would instruct the jury to disregard it, and confine their inquiry to the subject as stated in the general charge, to all of which defendant excepts.

"Be it further known, that the court, in their final charge, at the instance and on the request of plaintiff, charged the jury as follows:

"1. If they find for the plaintiff, they must assess for damages what would be a *just compensation* for the land taken, with interest, and not take into consideration any benefits that might result by reason of any improvement which might be placed upon said land.

"2. That the mere naked value of the land for farming purposes, is not necessarily the true measure of such compensation.

"3. But in arriving at what would be a 'just compensation,' the jury are to take into consideration: 1. The quantity of the land taken; 2. The place where, and the place from whence, it is taken, having reference to all the external circumstances. These circumstances may be, amongst others, the manner in which the piece taken divides the farm—the road going between the houses and buildings, and the cropping part of the farm—its going through the orchard, destroying a part thereof, and dividing it in an awkward and undesirable manner, and leaving a portion on the opposite side from the said buildings—its leaving the remaining land in an awkward and inconvenient form—its rendering an improved farm in a measure unimproved, by reason of its throwing it open to common.

"4. That if they find for plaintiff, they should find the amount of *damages* which the evidence shows was occasioned to the plaintiff, by reason of the taking and appropriating of said land; and in no event are they to take into consideration, in making up such damages, the benefits which said plank road might have conferred upon plaintiff or his lands. This is true, but the word damages is to be taken in the sense given in my written charge.

"5. That in considering the testimony, the jury are to look to the *number* of witnesses, for and against any mooted point, their intelligence, and the credibility of their testimony, and are to decide such points according to the preponderance of testimony thus considered.

"6. That if the jury are satisfied from the testimony, that said farm would be less valuable, by reason of the fact, that the owner would be under the necessity of building said fences, and of maintaining and ultimately removing the same, at a great expense, at such points as would result in little if any benefit to the farm, or in an inconvenience to the same, and being only useful as protection against said road, then, and in that case, the jury should take such facts

into consideration in making up their verdict.    To the giving of which defendant excepted.

"Be it further known, that after the jury had returned their verdict, defendant moved the court for a new trial, as follows:    And now comes the defendant, and moves the court for a new trial, on the following grounds:

"1. The verdict of the jury is against law and evidence, and the instructions of the court.

"2. That during the trial, evidence was given to the jury of the value of the incidental damages accruing to the plaintiff; and the jury, in considering the case, took into consideration that part of the evidence of the witnesses.

"3. The jury did consider and allow, as a part of the value of the land, incidental damages to the land not taken.

"4. That the jury, in estimating the value of the land, considered the evidence of witnesses, as to the value, based upon incidental damages, and which were shown to be such by the cross-examination of said witnesses.

"5. That a large part of the value of the land, as found by the jury, was made up of inconvenience and incidental damages; and was not the value of the land taken.

"6. That the court erred, in giving the 2d, 4th and 6th. instructions, as prayed for by plaintiff, and given by the court, the effect of which instructions was, to allow the jury to consider external circumstances, in fixing the value of the land; and in this, the court erred in the law of the case.

"Which motion was overruled by the court, to which the defendant excepted at the time.

"R. P. LOWE, Judge, &c."

The motion for a new trial being overruled, judgment was entered on the verdict.    To reverse this judgment, the defendants appeal, and assign for error, the various matters excepted to, as set forth in the bill of exceptions.

*J. C. Hall,* for the appellants.

*F. Semple,* for the appellee.

ISBELL, J.—The question now, for the first time, arises in this court, namely, what is the true criterion of compensation, in cases like the present? For, we assume, that when the statute uses the word damage, it has reference to the just compensation required by the constitution. It can but be anticipated, that, in the progress of improvement in our state, like cases will frequently come before the judicial tribunals; and at this early period, it is desirable that some plain, just rule, if possible, should be established, to guide in their determination. But it is quite obvious, that from the variety of circumstances attending such cases, that it will be impossible to lay down any very specific rule, which will not be subject to so many exceptions, as to serve to perplex, rather than to be a practical aid. We can, in fact, do little more than to enunciate a principle, upon which such assessment should be made.

The terms used in the constitution, "just compensation," are not ambiguous. They, undoubtedly, mean a fair equivalent; that the person whose property is taken, shall be made whole. But while the end to be attained is plain, the mode of arriving at it, is not without its difficulty. On due consideration, we see no more practical rule, than to first ascertain the fair marketable value of the premises over which the proposed improvement is to pass, irrespective of such improvement, and also a like value of the same, in the condition in which they will be immediately after the land for the improvement has been taken, irrespective of the benefit which will result from the improvement, and the difference in value, to constitute the measure of compensation. But in ascertaining the depreciated value of the premises, after that part which has been taken for public use, has been appropriated, regard must be had only to the immediate, and not remote, consequence of the appropriation; that is to say, the value of the remaining premises, is not to be depreciated by heaping consequence on consequence. While we see no more practical mode of ascertainment than this, yet it must still be borne in mind, that this is but a mode of ascertainment; that after all, the true criterion is, the one

provided by the constitution, namely, just compensation for the property taken.

We come now to the inquiry in the case before us : Did the court err in the particulars contended for by appellant ? The bill of exceptions shows, that the plaintiff interrogated the witnesses as to his damages ; and that they stated a general sum, which, it appears, included various items of incidental damage. How it was made to appear, that this general sum included the various items of incidental damage ; whether by the examination in chief, on the part of the plaintiff; or whether it became apparent by the cross-examination of the defendant ; and, again, whether the objection to the testimony, was on account of the generality of the question propounded to the witnesses, or because of the incidental circumstances of which they testified, is not made very clear by the bill. That the plaintiff may inquire generally as to the value of the land, before and after the appropriation, leaving the opposite party, by his right of cross-examination, to learn the ability of the witness to judge in the premises, and what he takes into consideration, in making up his judgment, we have no doubt. Neither have we any doubt, in case it should appear by such *cross-examination*, that the witness assumed a false basis of computation of value—that in appraising the land left, he took into consideration remote consequences of the appropriation— that it would be the duty of the court, especially on objection made, to inform the jury, that the estimate based upon such considerations, was not to be considered ; and in all of this, there would be no error.

Does this record disclose that anything more than substantially this, was the fact in relation to the admission of testimony in this case ? We conclude that it does not. First, for the reason, that it nowhere appears that the particular matter complained of, was drawn out in answer to any special interrogatory of the plaintiff, but the language of the bill is, " Plaintiff interrogated said witnesses as to the damages, and they did state *before* the jury a general sum of damages which, in their opinion, covered the inconvenience,"

&c. ; but by whose interrogation it was made to appear, that this sum covered these inconveniences, is not stated. But, secondly, it does appear, at least inferentially, that the evidence was drawn out by the defendant on cross-examination, from the fourth ground set forth by him in his motion for a new trial. If it satisfactorily appeared, that plaintiff was permitted to specially inquire as to some of these items of inconvenience, after objection taken ; as for instance, as to the damage he would sustain on account of dangers of depredations on his orchard, we should have no hesitancy in pronouncing it erroneous. Whether the court could cure such error, by instructing the jury to disregard such evidence, is not necessary now to decide.

With regard to the other ground assumed on error, after a careful examination of all the instructions, we conclude that taking them together, as they went to the jury, the principle of the above rules was not materially departed from by the court. It is true, that taking the second clause of the third instruction by itself, it would tend to an erroneous measure of compensation. But this is so distinctly qualified by the whole tenor of the instructions, that it would be presuming too much on the ignorance of the jury, to conclude that they could have been misled by it. In view of all the instructions, we conclude that if there existed any just ground of complaint, as to the measure of compensation, or the relation to that for which compensation should be given, it lay with the plaintiff rather than defendant.

Judgment affirmed.