Fleming v. The Chicago, D. & M. R. R. Co.

Fleming v. The Chicago, D. & M. R. R. Co.

1. Ad quod damnum proceedings: DAMAGES: RAILROAD. Where certain lots in a town, owned and used with other lots for purposes connected with the same business, but separated therefrom by streets and alleys, are appropriated for right of way of a railroad, the jury, in estimating damages therefor to the owner, should not consider all the lots thus used and separated as an entirety in respect to the business for which they were used, and allow damages accordingly. They should, in such case, estimate the value of the lots taken before the appropriation, then their value afterward, and the difference would be the measure of damages.

2. —— In ascertaining the depreciated value of the premises, the immediate, and not the remote or contingent, consequences of the appropriation, must alone be considered.

3. —— So, also, injuries that may result from unauthorized or unlawful acts for which the company is liable in an action, are not to be considered.

*Appeal from Clayton Circuit Court.*

Thursday, July 25.

This was a proceeding under chapter 55, of the Revision of 1860, for the assessment of damages caused by the defendant taking two lots in the town of North McGregor for the right of way of its railroad. Both parties appealed from the verdict of the sheriff's jury. The cause was tried on appeal in the circuit court to a jury, who rendered a verdict for plaintiff for $10,000 damages. Defendant appeals to this court.

*Shubael P. Adams* and *A. G. Gordan* for the appellant.

*Noble, Hatch & Frese* and *Thomas Updegraff* for the appellees.

Miller, J. — The evidence and the plat of a part of the town of North McGregor, shows that the line or way

| 34 | 353 |
| 85 | 467 |
| 34 | 353 |
| 86 | 21 |
| 34 | 353 |
| e117 | 300 |
| 117 | 301 |
| 34 | 353 |
| 128 | 152 |

of defendant's road crosses the track of the Milwaukee and St. Paul Railway on First street, in said town, between blocks 30 and 31, and runs upon said street north to block 18, where it laps over and occupies lots 1 and 40, in said block. The plaintiffs, in 1867 and 1868, became the owners of blocks 18, 19, 20, 21, 30 and 31, in said town. They are lumber manufacturers. Wm. Fleming testifies that they occupy six lots in block 31, all of block 20, all of block 19, except lot 1, all of block 18 except lots 1 and 40, taken by the railroad in this case, all of block 21 north of the track of the Milwaukee & St. Paul Railway.

The principal mill of plaintiffs is situated on block 31, which they have occupied as mill property since 1867, a former mill thereon having been destroyed by fire, and the present one erected at about the same place. Plaintiffs have also erected a small mill on block 20, which lies between blocks 31 and 18.

A large portion of block 21 is used by plaintiffs for piling lumber thereon, and for switches and side tracks for plaintiff's accommodation in shipping lumber west on the Milwaukee and St. Paul road. Block 18, which contains forty lots as platted, is low ground, the whole of the block being under water part of the year. It is submerged at the ordinary stages of water in the Mississippi river. The west end of the block is above low water, and the east end, where the lots in question are situated, being below low water cannot be used for piling lumber thereon without being filled up from fourteen to sixteen feet. This block has never been used except for storing logs, but it was claimed on the trial that it would be needed by plaintiffs in the successful prosecution of their business for the purpose of piling lumber thereon; that it was their intention to fill it up and use it for that purpose. And the court, against appellant's objections, admitted evidence to prove damages to all these blocks of ground belonging to plaintiffs, and to show how the contruction of the railroad

would injure the mills and property not contiguous to the lots taken by appellants, and what damages they would sustain in their lumber business generally on account of the construction of the road.

The court also instructed the jury as follows: "4. If the evidence satisfies you that plaintiffs purchased and owned these two lots, as a part of their mill property, designing them for that purpose, making a limited use of them for carrying on their business; that they were necessary to its successful operation, then the whole property, including the lots, was an entirety, although bounded by lot lines or separated from other portions by streets and alleys, and if the taking of these lots depreciated the value of the whole mill property, then the true criterion is, not the market value of the lots at the time of appropriation, but the amount the whole property has depreciated in consequence of such appropriation, or such sum as will make the owner whole."

"7. As to what matters may be taken into consideration in determining the amount of plaintiff's damages, the court instructs that in this case if you find, from the evidence, that these lots appropriated were a part of the mill property; that previous to the appropriation plaintiffs had organized a large and lucrative business, using for that purpose the whole premises, including these lots; that for that purpose they had filled up and reclaimed a portion of the whole premises, and were still filling up and reclaiming the balance as their work progressed; that, a short time previous to the appropriation, their business was interrupted by the burning of their mill; that immediately thereafter they commenced the work of re-building the mill and replacing the property, and at the time of the appropriation were still engaged in rebuilding, had the foundations made and the frame up or nearly ready to put up, and a large amount expended in the purchase of machinery; that after the appropriation they still continued and per-

fected the replacing and rebuilding of their property destroyed by fire; and you further find the property rebuilt is of great value, and the continuing business lucrative, then you may take into consideration all these facts in estimating the damages plaintiffs should recover, as the immediate and legitimate results of the appropriation of their premises by the defendant in the fall of 1871. You may also consider in estimating the damages, that this right, secured to defendant by the appropriation, is a perpetual one, without any further re-assessment or additional compensation to plaintiffs; that the company have, during all the time they may use said premises for railroad purposes, the absolute and entire control of the same. All these things you may take into consideration in estimating the damages."

"10. If you find from the evidence that the fire risk on plaintiff's mill property is increased by the appropriation of the two lots to his damage, you may take that fact into consideration in ascertaining the proper damages."

The court gave other instructions to the jury, but those above set out, show the theory upon which the case was tried and put to the jury. They were each excepted to by defendant, and are assigned as error.

The two lots appropriated by the railroad company are remote from plaintiffs' mills and separated therefrom and from their other property by public streets and alleys, and the court erred in instructing the jury that they might consider all the property owned by plaintiffs, though thus separated, as an entirety and allow damages resulting to the whole by the construction of the railroad. In *Sater* v. *The Burlington & Mt. Pleasant Plank-road Co.*, 1 Iowa, 386, it was held that the proper rule for estimating the damages for a right of way, is first to ascertain the fair marketable value of *the premises over which* the proposed improvement is to pass, irrespective of such improvement, and also a like value of the premises in which they will be,

after the land for the improvement has been taken, irrespective of the benefit which will result from the improvement, and the difference in value, will constitute the true measure of damages.

In the case of *Henry* v. *The Dubuque & Pacific R. R. Co.*, 2 id. 288, the grounds of the decision in the former case were carefully reviewed and affirmed. The rule established by these cases, then, is to ascertain the fair marketable value (leaving out of view all the time any benefits resulting from the improvement) of "the *premises over which the road passes*," and the like value of the *same* premises in their condition after the right of way is taken. It is not within the rule to consider the value of other premises belonging to the same party, not touched by the road at all. The injury to the premises over which the road is constructed, is to be compensated, and the mode of arriving at such injury and compensation is, first, to ascertain their fair marketable value, before the right of way is taken, and then their fair marketable value immediately after, and the difference is the true measure of damages; or, in other words, the amount the premises have been depreciated in their marketable value, by reason of the appropriation of a part of the premises for the right of way, is the measure of compensation. The true inquiry is what was the fair marketable value of this block 18, over which defendant's road passes, just prior to the appropriation of the right of way, then how much was *such* value reduced by such appropriation? The inquiry is not as to any special value *to the plaintiffs*, growing out of their ownership of other distinct and separate property, nor that the particular premises, over which the road passes, are intended to be put in the future to a particular use, in connection with other distinct and separate parcels of land owned and used by them in their business.

Had the railroad company continued the line of its road upon the street, in front of block 18, as it has constructed

it upon said street along and in front of the other blocks belonging to plaintiffs, the latter could have recovered no damages whatever for the lawful use of the street by the railroad company. *Milburn* v. *The City of Cedar Rapids et al.*, 12 Iowa, 246; *Slatten* v. *D. V. R. R. Co.*, 29 id. 148. If the company had taken none of the plaintiff s' property in block 18, they would have been entitled to no damages whatever. Can it be maintained, then, that because the road at this point laps over and takes these two lots, plaintiffs are entitled to damages to their other property, remote therefrom and not invaded by the railroad, by reason of it running in the street in front of such other property, and increasing the fire risk on their mills and lumber, and creating other inconveniences to their business? We think clearly not. The statement of the proposition is its own refutation.

Again, in ascertaining the depreciated value of the premises, regard must be had only to the immediate and not the remote or contingent consequences of the appropriation. The value of the remaining premises is not to be depreciated by heaping consequence upon consequence. *Sater* v. *B. & M. P. R. Co.*, *supra.* The present values, taking into consideration the extent of the rights conferred, are those which are to be arrived at. *Henry* v. *The Dubuque & P. R. R. Co.*, *supra.* The court permitted plaintiffs to give evidence of increased fire risk, not only to the mill property, but what it would be on lumber intended at some future time to be stored on the premises over which the road passes, and also inconveniences in moving lumber across the railroad track, to and from the same. Now it is beyond dispute, from the evidence, that these premises (block 18) had never been put to this use. It had never been used for storing lumber thereon and was not suitable for that purpose without being filled up. It may never be so fitted and may never be so used. The risks

Fleming v. The Chicago, D. & M. R. R. Co.

and inconveniences depending upon these contingencies are too remote to be allowed as elements of damages.

On the trial the defendant asked the court to give the following instruction :

" The alley running from First street, between lots 1 and 40, through the center of block 18, is a public highway, and the fee of the same is in the public ; and the railroad company acquire no right by the appropriation of said lots for railroad purposes, to obstruct said alley so as to prevent its free use by the public as a highway ; and you will allow no damages for any such obstruction." This the court refused to give and the refusal is assigned as error.

In this ruling there was error. The streets and alleys in cities and towns in this State are public highways. *Milburn* v. *The City of Cedar Rapids, supra.* And although the railroad company is authorized by law to construct its road over and across the same, yet it is not authorized to obstruct any highway, but must, where the railroad crosses the highway, put the same in good condition, and the company is liable in damages for neglecting to do so. Rev., §§ 1321, 1322, 1324, 1325. The damages to be awarded, on taking of the right of way for a railroad, include those only which result from the appropriation and lawful use of the premises taken, and do not embrace injuries that may result from unlawful acts for which the company is liable in an action to the party injured.

The judgment of the circuit court is

Reversed.