Western Newspaper Union, Appellant, *v.* City of Des Moines, A. J. Mathias, Mayor, Ben J. Ness, Sheriff of Polk County, Appellees.

**Municipal corporations:** viaducts: damages. The construction of a viaduct is not such a change of the street grade as precludes a recovery of damages by abutting property owners on account of the obstruction of access to the property, and of light and air; as the statutes expressly provide for damages caused by such improvements.

**Same:** damages: benefits: statutes. Under the statutes relating to recovery of damages by abutting owners for injury caused by the construction of a viaduct, as in the condemnation of property for internal improvement, recovery of damages can not be entirely defeated by a showing of prospective benefits, although such benefits may be considered in determining the damages.

**Same:** DAMAGES: OBSTRUCTION OF LIGHT AND AIR. Where the construction of a viaduct shuts out the light and air from abutting property, which are essential to the use of the property, that fact may be considered in determining the damages to a leasehold estate.

**Same:** DAMAGES: EVIDENCE. On the assessment of damages to abutting property arising from the construction of a viaduct, where it appeared that the city permitted abutting owners to connect their property with the viaduct, refusal to permit a lessee to show that by the terms of his lease he was not permitted to make the changes in the property necessary to make the connection was erroneous.

**Same:** EVIDENCE: CONCLUSION. In the assessment of damages to abutting property caused by the construction of a viaduct, it was erroneous to receive the evidence of witnesses as to the amount of damages, whose conclusions in that regard rested solely upon investigation of viaducts in another city; similarity of the situation in the two cities not being shown.

**Same:** EVIDENCE. On assessment of damages to leasehold property caused by the construction of a viaduct, permission for the city to show whether the leasehold interest was listed for taxation was erroneous.

Evans, J., dissenting in part.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

THURSDAY, MARCH 20, 1913.

THE City of Des Moines instituted condemnation proceedings to award the damages to plaintiff's leasehold, due to the construction of a viaduct over certain railway tracks in the City of Des Moines. The defendant sheriff selected a jury, which awarded the plaintiff the sum of $2,000. From this assessment the City appealed to the District Court, and upon trial to a jury, in that court, a verdict was returned, finding that plaintiff suffered no damages, and a judgment was accordingly entered against it for all of the costs of the proceedings. Plaintiff appeals.—*Reversed.*

*Thos. A. Chesire,* for appellant.

*H. W. Byers* and *R. O. Brennan,* for appellees.

DEEMER, J.—In the year 1903, plaintiff, a corporation, made a fifteen-year lease of a building owned by one F. M. Hubbell, which building was two stories high, with a basement, located upon a lot facing upon West Seventh street, in the city of Des Moines. This building faced east and was sixty feet in width and one hundred and thirty-two in depth, with a subbasement of some height. The lessor agreed to keep the roof and outside walls, which were of brick, in repair, and the lessee was to make all other repairs; aside from this, the lessor reserved the right to make such repairs as he wished. The rental was $300 per month. Plaintiff occupied the building for a printing plant and used therein presses in · the basement, had a stereotyping and printing department, a composing room, and other appliances used for printing newspapers, etc. It used large quantities of print paper, which were delivered to its building, and also considerable quantities of paper were used in its job printing department. These goods, and other material, were delivered by wagon, to and from the building. Seventh street is sixty-six feet wide, and Plum street, immediately north of the building, is a short one and is but thirty-three feet in width.

These proceedings were commenced before the sheriff, some time in the year 1911, and had reference to the proposed construction of a viaduct in Seventh street, crossing over a number of railway tracks to the south. By the proposed plan, the viaduct was to commence at Mulberry street, being a block north of the property which plaintiff occupied, and extending southward, gradually rising from Mulberry, and extending for something like eighteen hundred feet. The grade of the approach, from Mulberry street to the south, was five and nine-tenths feet to every

one hundred feet in length, and this approach had concrete retaining walls which were filled with earth and were finally covered with concrete. The west wall of this viaduct was twelve and a half feet from the east wall of the building which plaintiff was occupying, and at the north line of Plum street, which is just north of plaintiff's property, was nine and one-half feet in height above the then present roadway. The entire width of the viaduct was forty-one feet, leaving but twenty-five feet, or twelve and one-half feet on either side, between the walls of the viaduct and the lot lines on either side of the street. Openings were left in the viaduct at Plum street, which were thirty-five feet in width, save that there were piers, subdividing this opening, which were two feet square, leaving but thirty-three-foot openings through the viaduct. It was contemplated that these openings should be fourteen feet high at the south side of Plum street, thirteen feet at the center, and twelve feet at the north side; but this would necessitate a changing of the grade of Plum street, by depressing it, at its intersection with Seventh street, and at the time of trial it was not known just how much this depression would be. But, as we understand it, the plans contemplated a depression of five feet at this point, thus throwing the sidewalk grade out of joint, on both the east and west side of Seventh street, to the extent indicated, which would have to be taken care of, by a like depression of the street, for considerable distances on either side of Plum street, or by stairways or steps. In other words, the opening through the viaduct could not be used for practical purposes, without the depression of Plum street as already contemplated, and until it (Plum street) was depressed this viaduct practically closed Plum street at its intersection with Seventh. The viaduct occupied so much of the street that it was impossible for teams to pass, longitudinally thereon, on either side of the retaining walls, without driving on the sidewalks, and while

footmen might pass along the old sidewalks as they were, subject to change of the contour of the streets, they had to take the hazards of crossing all the railway tracks at grade, or 'at intervals taking steps leading up to the viaduct. The nearest one of these steps was sixty or seventy feet south of the building which plaintiff was occupying, and the stairway leading from the street to the viaduct at this point was six feet in width. The part of the viaduct fit for travel, in front of the building which plaintiff occupied, was thirty-six feet in width, inside the coping, and upon this a double-tracked street railway track was to be laid, which would occupy fifteen feet, in width, leaving ten and one-half feet on either side for wagon and foot passenger traffic. Plaintiff claims that its means of ingress and egress to the building has been seriously interfered with; that light and air have been cut off from the basement and first story of the building; and that the rental value of the property has otherwise been materially diminished and destroyed; and it introduced various witnesses, who testified to a damage of from $1,000 to $1,500 per year. Defendant offered other witnesses, who testified that the construction of the viaduct was no damage to the property, and some of them said it was a real benefit.

The jury found a general verdict for the city, which, interpreted, means that it found there was no loss in the rental value of the building by the construction of the viaduct. If the case stood upon the testimony alone, we would probably not be justified in interfering, for the verdict has support in the testimony and the facts in such cases are peculiarly for a jury. But plaintiff relies upon many alleged errors committed by the trial court—to be exact, forty-two in number. Of course, not all of these are argued, and the main propositions are grouped under headings, which very much reduce the number of assignments. We shall not pass upon all of these, however, for to do so would unduly extend this opinion, and shall confine our-

selves to a consideration of the more important and controlling propositions. At the outset, we may say that the arguments, filed by the respective counsel, are inapposite and unrelated.

In an able and learned argument for the city, counsel contend that the erection of an elevated viaduct over, or along, a street for the purpose of general public travel, and dedicated to public use, is the equivalent of a street improvement, or change in a city grade, and that a land or lot owner, abutting on such street, is not entitled to any damages for the impairment of access to his property or for being deprived of light or air; and they cite many cases in support of this proposition, among them being *Willis v. Winona City,* 59 Minn. 27 (60 N. W. 814, 26 L. R. A. 142); *Brand v. Multnomah County,* 38 Or. 79 (60 Pac. 390, 62 Pac. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772); *Mead v. Portland,* 45 Or. 1 (76 Pac. 347; s. c., 200 U. S. 148, 26 Sup. Ct. 171, 50 L. Ed. 413); *Sears v. Crocker,* 184 Mass. 586 (69 N. E. 327, 100 Am. St. Rep. 577); *Talcott v. City,* 134 Iowa, 113; *Sauer v. New York,* 206 U. S. 536 (27 Sup. Ct. 686, 51 L. Ed. 1176); *Colclough v. City,* 92 Wis. 182 (65 N. W. 1039); *Home Building Co. v. City,* 91 Va. 52 (20 S. E. 895, 27 L. R. A. 551), and cases cited. In other words, they liken this case to one of change of grade and broadly contend that plaintiff's property was not taken for public use; that, if any damages are to be awarded, they are upon the theory that the grade has been changed; and that in such cases benefits may be considered, and no allowance may be made for deprivation of light or air. This, in part, meets the objections made by appellant's counsel to various rulings made by the trial court, and, were it not for certain statutes and decisions of this court in previous cases, the argument filed for appellee would be quite persuasive.

In view of these statutes and decisions, we are not

*1. MUNICIPAL CORPORATIONS: viaducts: damages.*

convinced that appellee's argument is entirely responsive to the case made for appellant. Sections 771 and 771-a of the Code Supplement, as now amended, read as follows:

Sec. 771. When a viaduct shall be by ordinance declared necessary for the safety and protection of the public, the council shall provide for appraising, assessing and determining the damages which may be caused to any property by reason of the construction of the same and its approaches. The proceedings for such purpose shall be the same as are provided in case of taking private property for works of internal improvement, and the damages assessed shall be paid by the city out of the general bridge fund, or in cities having a population of twelve thousand, or over, from any other fund or funds legally available therefor.

Sec. 771-a. In cities having a population of twelve thousand or over, where a viaduct is required to be constructed, and the plans therefor have been approved, and there are no available funds in the general bridge fund, or any fund or funds of said city which may be legally used for the payment of such damages, such city may levy an annual tax not exceeding two mills on the dollar for the purpose of creating a fund to be known as a "viaduct fund," for the payment of damages caused to property by reason of the construction of such viaduct and approaches thereto.

It will be noted that the proceedings are to be the same as are provided for the taking of private property for works of internal improvement and have no reference whatever to proceedings incident to the change of grade of streets and alleys. The proceedings incident to the taking of private property are, so far as material, as follows:

Sec. 1999. If the owner of any real estate necessary to be taken for either of the purposes mentioned in this chapter refuses to grant the right of way or other necessary interest in said real estate required for such purposes, or if the owner and the corporation can not agree upon the compensation to be paid for the same, the sheriff of the county in which such real estate may be situated shall upon

written application of either party, appoint six freeholders of said county, not interested in the same or a like question, who shall inspect said real estate, and assess the damages which said owner will sustain by the appropriation of his land for the use of said corporation, and make report in writing to the sheriff of said county. . . .

Sec. 2000. The freeholders appointed shall be the commissioners to assess all damages to the owners of real estate in said county, and said corporation, or the owner of any land therein. . . .

Sec. 2004. At the time fixed for either of the aforesaid notices, the appraisement of the lands described may be made and returned; but the appraisement and return may be in parcels larger than forty acres belonging to one person and lying in one tract. . . .

Sec. 2009. Either party may appeal from such assessment to the district court, within thirty days after the assessment is made, by giving the adverse party, or, if such party is the corporation, its agent or attorney, and the sheriff notice in writing that such appeal has been taken.

. . .

Sec. 2011. . . . The amount of damages shall be ascertained and entered of record, and if no money has been paid or deposited with the sheriff, the corporation shall pay the amount so ascertained, or deposit the same with the sheriff, before entering upon the premises. Should the corporation decline to take the property and pay the damages awarded on final determination of the appeal, then it shall pay, in addition to the costs and damages actually suffered by the land owner, reasonable attorney's fees, to be taxed by the court.

Under these provisions, construed with reference to section 18 of article 1 of the Constitution, it is held that the benefits to the property, by reason of the improvement, can not be taken into consideration. *Frederick v. Shane,* 32 Iowa, 254; *Bland v. Hixenbaugh,* 39 Iowa, 532; *Britton v. Railroad Co.,* 59 Iowa, 540; *Sater v. Road Co.,* 1 Iowa, 386. On the other hand, it is held that the mere change of the grade of a street, under statutes author-

2. SAME: damages: benefits: statutes.

izing the same, is not such a taking of private property as that benefits, arising to property abutting thereon, may not be considered. *Stewart v. City,* 84 Iowa, 61. But it has also been held that the laying of a railway track upon the street of a city is an additional servitude, and that compensation in such cases must be awarded abutting property owners—this doubtless by reason of a statute so providing. See Code, sec. 767. In construing this latter statute, which is much like the viaduct statute now under consideration, we said, in *Enos v. Railroad,* 78 Iowa, 31:

> Counsel insist that, as the plaintiff's lot was subject to inundation from high water, the embankment on which the railroad track was laid, being above high water, would not have been an injury to plaintiff. Doubtless the embankment, under some circumstances connected with inundation, would not have been an injury, or so great an injury as it would have been were the lot not subject to inundation. But it can not be rightly claimed, because of the fact that plaintiff's lot is low, that he can not recover at all for the construction of the railroad. The question as to the height of the embankment, the fact that the lot was subject to inundation, and all circumstances of the case, were submitted, by an instruction, to the jury's consideration in determining plaintiff's damages.

If we understand this holding, it is to the effect that, while benefits may be considered, they should not be permitted to entirely preclude a recovery. It is certainly true that under the viaduct statutes quoted, abutting property owners are entitled to damages for the construction of viaducts, and their approaches, in the streets, and that entirely consequential and remote or speculative benefits, can not be considered. And, in no event, should the supposed benefits be permitted to entirely deprive the property owner, or a lessee, of all damages. It is true that the statutes are somewhat obscure, and that we have nothing but analogies for our guide; but, as the proceedings are with reference to works of internal improvement and not

assimilated to those provided for change of grade, we think it clear that, as a rule, it is incompetent to show no damages because of remote and prospective benefits, due to the construction of the viaduct. Even where damages are awarded for change of grade, the test generally is the difference in the value of the property, or, if it be a leasehold, the difference in value of the use of the property immediately before and immediately after the change of grade, and, as already stated, immediate resulting benefits may be considered, and if these are more than the damages, then no recovery may be had. *McCash v. Burlington,* 72 Iowa, 26; *Meyer v. City,* 52 Iowa, 560. In other words, if some improvement is necessary, as by filling of the lots or otherwise, the benefits can not be said to be equal to the damage. *Preston v. City,* 95 Iowa, 71; *Thompson v. Keokuk,* 61 Iowa, 187. We are constrained to hold that benefits may be considered to the extent indicated, but not farther.

As to the obstruction of light and air: While it is true, perhaps, that an owner may not, under our law, complain of the shutting off thereof, it seems quite clear to us that such facts may be considered in determining the damages done to a leasehold, where air and light are essential to the prosecution of the business. This seems to be the holding in numerous cases. See *Turner v. Sheffield R. R.,* 10 M. & W. 425; *Stack v. City,* 85 Ill. 377 (28 Am. Rep. 619); *Rose v. Stewart,* 77 Hun, 306 (28 N. Y. Supp. 318); *Nordlinger v. Railway Co.,* 77 Hun, 311 (28 N. Y. Supp. 361). Under our present holdings, abutting property owners may have damages for the vacation of a street. *Ridgeway v. City,* 139 Iowa, 590; *Long v. Wilson,* 119 Iowa, 267; *Borghart v. City,* 126 Iowa, 313. In the instant case, the street was practically vacated, in so far as plaintiff was concerned, and the witnesses who testified for plaintiff were justified in taking that into account. More-

3. SAME: damages: obstruction of light and air.

over, the city proceeded under sections 771 and 771-a of the Code Supplement, before quoted, and these provide for assessing, appraising, and determining the damages caused to any property by reason of the construction of the viaduct; the proceedings to be the same as provided in taking property for works of internal improvement. We are not convinced that benefits may not be considered, but they must be such as result directly from the improvement, and not indirectly or remotely or speculatively therefrom. What we have said answers the first general propositions relied upon for appellants, and will be a guide for the retrial of the case.

II. We have given, in a general way, the terms of plaintiff's lease and found that plaintiff had no right to make any changes in the exterior of the building, yet the trial court permitted the defendant to prove that, by ordinance or resolution, it had granted the right to property owners along Seventh street to connect with the viaduct, by building approaches, bridges, or connections therewith, from their buildings, so as to enable customers to go from the viaduct, directly, into the building, or to haul loads to and from the same. In view of this, plaintiff sought to show whether or not defendant's witnesses took this into account in estimating the damages to the leasehold. But this they were not permitted to do. In this, we think, there was manifest error. Plaintiff could neither construct these approaches nor compel their landlord to do so during the term of the lease, and that fact should have been called to the attention of the jury and witnesses should have been permitted to be cross-examined with reference thereto. These propositions are very fundamental.

4. SAME: damages: evidence.

III. The court also erred in admitting the proceedings before the Railroad Commissioners of the state, but the error here seems to us to have been nonprejudicial.

IV. Some of the defendant's witnesses based their

conclusions of no damage upon an investigation of the effects of the construction of viaducts upon abutting property, and one said that his conclusion was bottomed upon what he found in that respect in another city. It seems to us that this was an insufficient basis upon which to form an opinion. The situation, in the two cities, was not shown to be the same, and the investigation had reference, not to immediate results, but to final advantages, after various connections were made, by bridges, approaches, etc., and after business had adjusted itself to the new conditions.

5. SAME: evidence: conclusion.

V. This question was put to another witness, and, over objections, he was permitted to answer it: "Now, Mr. Sani, assuming that the property owner and the tenant would have the right to use that approach and to connect the building by bridge or approach to this regular approach to the viaduct, is there any practical way, and, if so, tell the jury in what manner, a bridge or approach might be used for the purpose of getting merchandise into this building on the Seventh street side?" For reasons already stated, the objection should have been sustained.

VI. One of plaintiff's witnesses was asked as to whether or not he had ever listed, with the assessor, any leasehold interest held by plaintiff company. Assuming that it was the duty of the witness to do so, which is not shown, we think the question was highly improper and prejudicial.

VII. Plaintiff's request that the jury be instructed to disregard the ordinance, or resolution, permitting abutting property owners to connect with the viaduct, by approaches or bridges, should have been given.

6. SAME: evidence.

Some support is to be found for our conclusions in *Globe Co. v. City*, 156 Iowa, 267.

For the errors pointed out, the judgment must be, and it is, *Reversed.*

EVANS, J. (dissenting in part).—I. I agree with the opinion that benefits to the property may be considered in this class of actions. The constitutional prohibition against consideration of benefits has no application thereto. I see no legal reason, however, for holding "that, while benefits may be considered, they should not be permitted to entirely preclude a recovery, .' . . and that in no event should the supposed benefits be permitted to entirely deprive the property owner or a lessee of all damages." The foregoing quotation is from the opinion. Authority for this holding is claimed in *Enos v. Railway Co.*, 78 Iowa, 31. The opinion in that case is quoted by the majority, and I can see nothing therein which supports this proposition. The usual tendency of street improvement is to benefit adjoining property. And this is so even though in a given case there may be incidental damage. If the damage be small and the direct benefit be great, why should it be forbidden to apply the benefit to the extinction of the damage? If it may be applied to a part of the damage, why not to the whole, if the evidence justifies it?

II. I disagree with paragraphs 5 and 7 of the opinion. The methods by which adjoining occupants could avail themselves of the improvement would ordinarily be proper for the consideration of the jury in any case. Such evidence would not be rendered inadmissible by the peculiarities of plaintiff's contract with its landlord. Such contract was itself a matter of proof by plaintiff. The city acted in conformity to the statute. It violated no right of plaintiff. The plaintiff's right of damages, if any, is statutory. The city was bound to furnish equal facilities for use of the improvement to all adjoining occupants. It could not legally do less for one than for another; neither could it do more. If evidence of such equal facilities is admissible in one case, it is for the same reason admissible in all.