# STATE OF MARYLAND

*vs.*

# BENJAMIN MELLOR.

*Liquor License Law—Applicability to Druggist.*

The provision of Acts 1892, ch. 281, as amended by Acts 1902, ch. 249, that "no person" shall sell intoxicating liquor in Ellicott City without a license, applies to druggists and pharmacists, the statutes making no exception in their favor.

*Decided January 25th, 1922.*

Appeal from the Circuit Court for Howard County (THOMAS, C. J., FORSYTH and MOSS, JJ.).

Criminal proceeding against Benjamin Mellor. From a judgment discharging defendant from the indictment, the State appeals. Reversed.

The cause was argued before BOYD, C. J., PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Alexander Armstrong, Attorney General, Lindsay C. Spencer, Assistant Attorney General,* with whom was *James Clark, State's Attorney for Howard County,* on the brief, for the appellant.

The statute in question applies to druggists. *Brown* v. *State,* 9 Neb. 189; *Rochester* v. *Upman,* 19 Neb. 108; *Carson* v. *State,* 69 Ala. 235; *Chew* v. *State,* 43 Ark. 361; *City of Salina* v. *Seitz,* 16 Kan. 143; *State* v. *Brown,* 31 Me. 522; *Gault* v. *State,* 34 Ga. 533; *State* v. *Gray,* 61 Conn. 39; *State* v. *Bissell,* 67 Iowa, 616; *Wright* v. *People,* 101 Ill. 126; *Joyce, Intox. Liquors,* sec. 202; *Woollen & Thornton, Intox. Liquors,* sec. 501.

*Raymond S. Williams* and *Joseph L. Donovan*, with whom were *Hershey, Machen, Donaldson & Williams* on the brief, for the appellee.

Such a statute does not apply to druggists selling for medicinal purposes.  *Woollen & Thornton, Intox. Liquors*, sec. 501; *Donnell* v. *State*, 2 Ind.. 658; *State* v. *Wray*, 72 N. C. 253; *Jakes* v. *State*, 42 Ind. 473; *Ball* v. *State*, 50 Ind. 595; *Hooper* v. *State*, 56 Ind. 153; *Nixon* v. *State*, 76 Ind. 524; *Hamline* v. *Comm.*, 13 Bush (Ky.), 350; *Anderson* v. *Comm.*, 72 Ky. 579; *State* v. *Larrimore*, 19 Mo. 391; *Kink* v. *Chicoyne*, 8 Can. Crim. Cases, 507; *U. S.* v. *Calhoun*, 39 Fed. 604.

Where necessary to effectuate the intention of the Legislature, courts will read an exception into the statute.  *Intoxicating Liquor Cases*, 25 Kan. 757; *Seim* v. *State*, 55 Md. 566; *State* v. *Maryland Club*, 105 Md. 585.

Offutt, J., delivered the opinion of the Court.

Benjamin Mellor was indicted in the Circuit Court for Howard County for the sale of intoxicating liquor in Ellicott City, Maryland, without first having obtained a license permitting such sale.  To that indictment he filed a special plea in the following form: "That at the time of the said sale mentioned in the indictment he was a graduate pharmacist duly licensed by the State of Maryland, engaged in keeping a drug store, and was the holder of a trader's license issued by the State of Maryland through Hart B. Noll, Clerk of the Circuit Court for Howard County, and he was duly permitted and authorized by permit issued by John T. Kramer, United States Commissioner of Prohibition, under the said United States Prohibition Act to sell intoxicating liquors, including whiskey, for other than beverage purposes upon prescriptions duly issued by practicing physicians, also holding permits to prescribe intoxicating liquors, including whiskey, for their patients for non-beverage purposes, and that for many years he has, without objection upon the part of any

duly constituted authority of Ellicott City, in the second Election District of Howard County, State of Maryland, dispensed whiskey in quantities of not less than a pint to persons presenting prescriptions issued by duly licensed and practicing physicians, and that the said Benjamin Mellor on the date alleged in the indictment did sell to Julius Wosch one pint of spirituous and fermented liquor, to wit, whiskey, upon a written, bona fide prescription of a regular practicing physician, to wit, Dr. Frank O. Miller, who was duly licensed under the National Prohibition Act and regulations issued thereunder to issue said prescription, and whose patient said Julius Wosch then and there was, and that said sale was bona fide and with due care made as above alleged for non-beverage purposes. A demurrer to that plea was overruled, and the State declining to traverse it the appellee was discharged from the indictment, and from that judgment this appeal was taken.

The only question presented by the appeal is whether, under the Public Local Laws, or Public General Laws, of Maryland, in force in Howard County, a duly licensed pharmacist is authorized to sell intoxicating liquor upon the *bona fide* prescription of a duly licensed and practicing physician legally authorized to issue the same, without having first obtained from the State a license permitting such sale.

The solution of this question depends upon the true meaning and intent of the statutes regulating the sale of spirituous and intoxicating liquor within the corporate limits of Ellicott City. By chapter 450 of the Acts of 1882, the qualified voters of Howard County were enabled to determine by ballot whether "spirituous, fermented or intoxicating liquors" should be sold in that county, and, their decision being against such sale, it became unlawful under that act to sell such liquors in Howard County after May 1st, 1883. That general prohibition did not however extend to licensed pharmacists and druggists, who were by its terms permitted to sell such liquors upon the prescription of a regular practicing physician, under certain regulations provided by the

act. The provisions of that act, to which we have referred, were by chapter 281 of the Acts of 1892 repealed in so far as they applied to Ellicott City, and it provided in lieu of them a system for licensing the sale of intoxicating liquors in that city. That act provided that "no person" should sell within the corporate limits of Ellicott City any such liquor without first having obtained a license permitting such sale, and it did not exempt druggists or pharmacists from that requirement. The law was further amended by chapter 249 of the acts of 1902, which in part provides that no license for the sale of intoxicating liquor in Ellicott City should be granted "where groceries, merchandise, or any other goods are to be sold on the same premises."

By the literal language of these statutes, which are the only statutes material to the question before us, it is unlawful for any person to sell intoxicating liquor in Ellicott City without a license permitting such sale; no druggist selling groceries, wares or other merchandise can secure a license for the sale of such liquor on the premises on which he carries on such business, and therefore, no druggist engaged in such a business can lawfully sell on the same premises intoxicating liquors in that territory.

The appellee, however, contends that the true meaning and real intent of the act is in conflict with the letter thereof, and that while the letter says that "no person" shall sell liquor within the territory named without first having obtained a license permitting such sale, and therefore applies to druggists as well as to persons engaged in any other business, the spirit and intent and true meaning of the act is that the phrase "any person" does not apply to druggists or pharmacists and that they are therefore not within the provisions of the statute regulating the sale of intoxicating liquors in Ellicott City, and may lawfully sell such liquor upon the prescription of a physician duly authorized to issue such prescription.

It is not contended that the Legislature had not the power to require druggists or pharmacists to obtain a license for

the sale of intoxicating liquors, and therefore the only question open is whether in the adoption of these statutes they exercised that power. In dealing with that question our inquiry is limited, by definite and well established rules, to ascertaining and giving effect to the intention of the Legislature, and we cannot, under a pretence of construction or interpretation, ignore or override the legislative intent.

As was said in *Roberts* v. *Edie,* 85 Md. 188: "Our province is to construe the law as we find it, and not under the guise of interpreting it, to enact new legislation, or to repeal that which has been duly adopted." "The language of a statute is its most natural expositor, and where the language is susceptible of a sensible interpretation it is not to be controlled by any extraneous consideration." *Alexander* v. *Worthington,* 5 Md. 485. And while we are bound to give effect to the intent of the statute we are constrained to accept as its intent that which its letter implies where the letter is clear, plain and free from doubt. To quote further from the case last cited: "We are not at liberty to imagine an intent, and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting, and remodeling, with the view of making the letter express an intent which the statute in its native form does not evidence. Every construction, therefore, is vicious which requires great changes in the letter of the statute; and of several constructions that is to be preferred, which introduces the most general and uniform remedy." These principles, which are generally recognized and, so far as we know, unquestioned, are illustrated by a number of cases gathered in a note to *Volume* 5 *of Perkin's Edition of the Maryland Reports,* p. 472 *et seq.* Applying them to the facts before us, we find this difficulty in the way of the appellee's contention, that is, that by the clear, plain and unambiguous letter of the statutes druggists and pharmacists are within its intent and governed by its provisions. For while the Legislature did not in terms specify particularly and by names druggists and

pharmacists as "persons" to be affected by its provisions, it did say, that "no person" should sell intoxicating liquor in the designated territory without a license, and druggists and pharmacists are included in that general description of those to whom the act applied. Upon what principle then can we say that the statute does not apply to druggists, without disregarding or overriding the intent of the Legislature?

Several reasons have been suggested by the appellee to justify the construction placed by him upon the act in question, but as they are in direct conflict with the principles to which we have adverted, or with others equally well settled, we do not regard them as sound.

One of these reasons is that "under a law making prohibition absolute, druggists are not forbidden to sell intoxicating liquors upon *bona fide* prescriptions of practicing physicians issued to their patients." Obviously that proposition is too broad. If it said that "under *some* laws, etc.," druggists are not forbidden to make such sales, the proposition would be perhaps sound in law, but meaningless as an argument in this case, and if it said that "under laws *similar* to the statute involved in this case," druggists are not forbidden to make such sales, then, while its purpose as an argument would be clear enough, it would not, in our opinion, be sound in law, notwithstanding the authorities cited in support of this latter hypothesis, to some of which we will refer.

In *Cearfoss* v. *State*, 42 Md. 403, it was held that the fact that the traverser had, on the day of an election in Washington County, in his own house for purposes of hospitality, permitted visiting friends to partake of whiskey which he had there for his own use, was no defense to an indictment on a statute making it unlawful for "any person * * * to give * * * any intoxicating drinks * * * on the day of any election * * * ." In the course of the opinion the Court said: "Whether the administration of intoxicating liquor, in good faith for medicinal or other necessary purposes, although within the letter, would be within the mischief, is

a question not necessary to be decided in this case; but if it should ever arise, we should have no hesitation in saying that it would not be an offense within the spirit of the act." Assuming, but not deciding, that by this illustrative expression the Court meant to decide the hypothetical case alluded to, its decision had no reference to the *sale* of intoxicating liquor, but to the *administration* thereof, which is an entirely different thing, and the right to administer such liquor as medicine in an emergency requiring its use is a different thing from the right to sell it without a license. We do not, therefore, consider that this case supports the appellee's position.

There are decisions, it is true, in other states which tend to support the appellee's contention, and in regard to them it is sufficient to say that, as they are in conflict with legal principles adopted by this Court, and what we regard as the force of reason and the weight of authority, we are unable to concur in the conclusions reached in them. *Nixon* v. *State*, 76 Ind. 526, is typical of these cases. There the court said: "It is true that the statute, under which the appellant was indicted, contains no exceptions authorizing the sales of intoxicating liquors, without license, for medicinal, chemical or sacramental purposes. But it has always been held by this court, in construing similar statutes, that the courts will except, from the prohibitory or penal provisions of the statute, all *bona fide* sales of such liquors for such purposes." But according to our decisions it is the function of the Legislature and not of the courts to make such an exception. To much the same effect is *Donnell* v. *State*, 2 Ind. 658, in which the court said: "Statutes certainly are not always, nor ought they to be, construed literally. The Bolognian Law, which enacted that whoever drew blood in the streets should be punished with the utmost severity, was held not to extend to the surgeons who opened a vein of a person that fell down in the street with a fit (1 *Blackstone's Comm.* 60)."

In referring to the case last cited, it is said in *Woollen &
Thornton on Intoxicating Liquors*: "It will be noticed that
the Bolognian Law was not decided in favor of the surgeon
until 'after long debate.'  Confessedly, then, this was not a
strong precedent upon which to hang the Indiana decision
from which we have quoted.  The North Carolina case upon
this point has been limited, if not overruled, by the Supreme
Court of that state.  In the last case cited (*State* v. *Dalton,*
101 N. C. 680), it was said: 'This court will not go, by
construction or interpretation, beyond the ruling in *State* v.
*Wray.*  To do so would tend to impair the force of the stat-
ute, weaken its restraining power, and often to defeat the
legislative will by rendering evasions and violations of the
law easy.'  In accord with the thought last expressed are
many well considered cases which hold that such a sale is a
violation of the law, even though it is made upon the pre-
scription of a physician, and there was no one authorized
to issue a druggist's license, and this we regard as the better
holding."  The same conclusion is reached by *Joyce on
Intoxicating Liquors,* sec. 202, and in many well consid-
ered cases collected in these treatises and cited by the au-
thors in support of the text.  In *State* v. *McBrayer,* 98 N. C.
619, a physician was indicted for violating a statute for-
bidding a dealer in intoxicating liquors from selling or giv-
ing the same to unmarried minors.  The defense was made
that he gave the intoxicant as a medicine and not as a bev-
erage, and the court, in dealing with that defense, said:
"But it is said, 'Can it be that a practicing physician shall
not sell or give such drinks and liquors to his patients when
they require the same?'  Certainly not, if he is a dealer in
them; otherwise he may do so.  A practicing physician who
is such dealer is prohibited from making such sales and gifts
as certainly as other persons.  It is suggested that he does
not sell or give any such intoxicants as a *beverage,* but as a
medicine.  But the statute makes no such distinction.  Why
is none provided?  Especially why not in this statute, while
such distinction is provided in similar statutes forbidding

the sale of intoxicating liquors generally in certain pre-
scribed localities, as in the town of Shelby, where the sale
in question was made, and elsewhere? The striking omis-
sion was scarcely an inadvertence. It is not unreasonable
to infer that it was intentional, and that by it the Legis-
lature intended the more certainly to effectuate the purpose
of the statute. The counsel for the appellant pressed upon
our attention the case of *State* v. *Wray,* 72 N. C. 253, which
decided that a druggist might in good faith sell as a medi-
cine, by direction of a physician, spirituous liquors in a
quantity less than a quart. That case, it seems to us, went
to the extreme limit of the power of interpretation; but,
treating it as well warranted, it does not apply here."

The reason why the construction for which the appellee
contends is not applicable to such a case as this is very
clearly illustrated by the opinion of the court in *Brown* v.
*State,* 9 Neb. 189. In that case the traverser was indicted
for violating a statute which provided that "any person"
who sold intoxicating liquors without license should be guilty
of a misdemeanor. In construing that language, the court
said: "This language is general, and comprehends all per-
sons whomsoever, no matter what their particular calling or
business may happen to be. None are exempted from its
operation. It applies to him who deals in drugs just as
clearly as it does to the keeper of a boarding house, a saloon
or restaurant, or a hotel. The Legislature not having sig-
nified their intention to make an exception in favor of the
defendant's business, the courts certainly cannot do so."
And to the same effect is *Rochester* v. *Upman,* 19 Minn.
108, and *Carson* v. *State,* 69 Ala. 235.

Another reason advanced in support of the appellant's
contention is that if the statute is construed literally "no
physician can hereafter prescribe a gill of brandy to a pa-
tient, no matter what the necessity, and no druggist can sell
a pint of pure alcohol in Ellicott City." Here again the
proposition is too broad. It does not follow that because a
druggist cannot sell intoxicating liquor without a license,

that a physician cannot prescribe it. There is nothing in the statute which by any possible construction forbids physicians from prescribing such remedies for their patients as the necessities of the case may suggest.

Nor could the fact, even if it were a fact, that druggists cannot sell pure alcohol in Ellicott City affect our construction of the statute. *Commonwealth* v. *Kimball*, 24 Pick. 366. The argument of inconvenience cannot overcome the clear language of the statute. *Frazier* v. *Warfield*, 13 Md. 279.

The last reason, submittd against a literal construction of the act, is that the "policy of the State" as shown by "long continued practical construction" and "judicial decisions" is against such a construction. "The policy of the State" is, of course best shown by the statute, which is its most authoritative expression. But passing from that, the "long continued construction," referred to, is the fact that Mellor sold intoxicating liquors in Ellicott City "without objection upon the part of any duly constituted authority of Ellicott City" upon the prescription of licensed physicians for many years. No one can acquire a prescriptive right to violate the law, and the fact that the appellee and the "constituted authorities of Ellicott City" agreed upon a mutually satisfactory interpretation of the statute may have been due to a variety of reasons, but whatever may have been the inspiration for the concert, it surely cannot have the effect of repealing a perfectly clear and valid statute.

The "judicial" decisions relied upon by the appellee in support of the proposition that a literal construction of the statute is contrary to the policy of the State rest finally upon the *Seim case*, in 55 Md. 566, but as the only thing decided in that case was that, under the facts proven there, the transaction in which Seim obtained liquor from a club of which he was a member was not a sale, and for that reason not within the literal construction of the act, that cannot be regarded as an authority in favor of the appellee's contention.

From what has been said in our opinion, the language of the statute under consideration is plain and its meaning clear. The provision that "no person" shall sell intoxicating liquor in Ellicott City without a license applies to and includes druggists. If the intention of the Legislature was to exempt druggists from its provisions, that intention should have been expressed in the Act itself, as was done in the Act of 1882. The Legislature having omitted to create that exemption, we cannot supply the omission or do for it what it in the exercise of its power it could have done but did not do. The facts set up in the defendant's plea did not therefore, constitute a defense to the indictment in this case, and the demurrer to it should have been sustained.

For the error committed in overruling that demurrer, the judgment appealed from must be reversed.

> *Judgment reversed and case remanded for a new trial, with costs to the appellant.*