PUERTO RICO HOUSING AUTHORITY, Plaintiff and Appellant-Appellee, *v.* JUAN VALLDEJULI RODRÍGUEZ, Defendant and Appellant-Appellee, THE FEDERAL LAND BANK OF BALTIMORE ET AL., Defendants and Appellees.

No. 10009.   Argued April 19, 1950.—Decided June 23, 1950.

*Brown, Newson & Córdova* for defendant and appellant-appel-
lee. *Rafael B. Pérez Mercado* and *F. Sojo Granado* for
plaintiff and appellee-appellant.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The Housing Authority of Puerto Rico filed in the Tri-
bunal of the District of San Juan a condemnation proceed-
ing against 89.22 cuerdas of land located in Río Piedras for
a low-cost housing project. The Authority alleged that the
fair value of the land was $74,944.80, which it deposited in
court when it filed the complaint and the declaration of
taking. Ten months later, after the answer had been filed,
the Authority filed by permission of the lower court an
amended complaint alleging that the land was worth only
$35,689.84. After a trial on the merits, the district court
entered a judgment fixing the value of the land at $78,192,
and both parties appealed. We consider first the appeal of
the landowner, Juan Valldejuli Rodríguez.

The first assignment by Valldejuli is that the lower
court erred in refusing to admit evidence of three contem-
poraneous sales of allegedly similar lands in which the Au-
thority itself was the purchaser.

The cases are divided in the United States as to whether
contemporaneous sales of similar lands are admissible in
evidence under any circumstances on the issue of the fair
value of condemned land. Annotations, 118 A.L.R. 869;
174 A.L.R. 386. We have followed the majority rule in hold-
ing that free and voluntary sales of that nature are admis-
sible. *People* v. *Lamboglia*, 70 P.R.R. 773; *People* v. *Huyke*,
70 P.R.R. 720; *People* v. *Carmona*, 70 P.R.R. 292.

The question still remains, however, as to whether contemporaneous purchases of similar land by the condemnor itself are admissible. We left this question open in *People* v. *García*, 66 P.R.R. 478, 482. The majority of the cases exclude such evidence. The theory of these cases is that a sale to an entity which has the power of condemnation is in effect a forced sale which at the most constitutes a compromise and therefore does not furnish any guide to the trier of the facts as to the price at which the property would be sold in a free market of voluntary purchasers and sellers. These cases assert that a purchaser with the power to condemn might pay more than the value of the land to avoid the expense, delay and uncertainty of a condemnation suit, and that a seller might accept less to avoid the same contingencies. See Annotations, 118 A.L.R. 893; 174 A.L.R. 395.

We cannot give our approval to this absolute rule of exclusion. We believe the minority, which represents the modern tendency in the cases, is the better rule. We agree that a sale produced by compulsion exerted on the seller by the buyer is not a proper standard of fair market value. But, as Holmes pointed out long ago, "We cannot say merely because of the name of the purchaser that the sale was not a fair transaction in the market rather than a compulsory settlement." *O'Malley* v. *Commonwealth*, 65 N. E. 30, 31 (Mass., 1902). On the contrary, each case is bottomed on its own facts. It is true that such sales must be scrutinized more closely than those to persons not possessing the power to condemn. And the burden is on the person offering them to show they were free and voluntary, although aided by the presumption that like other sales they were not under compulsion. But once they are found to be voluntary, they must be treated like other sales; *i.e.*, they must be admitted if found to be contemporaneous sales of similar property. Finally, in determining if the sale was voluntary, the trial court, as on the issue of whether the sale took place con-

temporaneously and involved similar property, must exercise a sound discretion which rarely calls for reversal by us. *Amory* v. *Commonwealth*, 72 N.E. 2d 549, 559–60 (Mass., 1947); *Eames* v. *Southern New Hampshire Hydro-Electric Corp.*, 159 Atl. 128 (N.H., 1932); *Seaboard Air Line Ry* v. *Chamblin*, 60 S. E. 727 (Va., 1908); Annotation, 118 A.L.R. 869, 893; 174 A.L.R. 386, 395. See *Baetjer* v. *United States*, 143 F. 2d 391, 396 (C.A. 1, 1944); *Hanson Co.* v. *United States*, 261 U. S. 581, 589.

In reaching the conclusion that such sales are admissible if found to be voluntary, we have borne in mind that such evidence is usually the best evidence of market value available. This is vividly demonstrated in the instant case where the lower court, having excluded these and two other recent sales, was forced to rely as to value solely on expert opinion which is "at best, a guess by informed persons." *United States* v. *Miller*, 317 U. S. 369, 375; *Baetjer* v. *United States*, *supra*, p. 396; *Epstein* v. *Boston Housing Authority*, 58 N.E. 2d 135, 138 (Mass., 1944).

Moreover, our conclusion is buttressed by two other circumstances. In Puerto Rico the problem of exclusionary rules of evidence is mitigated by the fact that we have trial by court rather than by jury in condemnation cases. See *People* v. *Lamboglia*, *supra*. And here the condemnor may obtain immediate possession by means of a declaration of taking and order of possession. These two circumstances do not exist in many of the jurisdictions which follow the majority rule.

The lower court should have exercised its discretion in the determination of two questions: (1) were these sales contemporaneous sales of similar land?; (2) did the evidence tend to show that the sale to the condemnor was voluntary? The trial court refused to pass on the second question. Instead it adopted an absolute rule of exclusion for all sales to the condemnor. This was erroneous. And the error was prejudicial to the landowner, in view of the fact that the

award substantially followed the testimony of the expert of the Authority, whose opinion as to value was considerably lower than the prices of the sales which were excluded. If these sales had been admitted in evidence, the award might conceivably have been in a higher amount. We shall therefore remand the case to enable the lower court to determine on the evidence whether the sale was voluntary. If these sales are found to be voluntary (and contemporaneous sales of similar land), they must be admitted in evidence and considered by the trial court.

The two remaining errors assigned by Valldejuli are that the lower court erred in weighing the evidence (1) in holding that two sales offered in evidence were not similar sales and (2) in deciding the controversy solely on the testimony of the expert of the Authority. As the case is being remanded, we leave the problem of whether these two sales should be considered to the trial court. We observe, however, that the test is that, to be admissible in evidence, the sale need only be of similar, not equal, land. People v. Carmona, supra, p. 297.

In his brief Valldejuli expresses the view that on remand we are required to return the case to the Tribunal of the District of San Juan for further proceedings. We do not agree. Section 4 of Act No. 223, Laws of Puerto Rico, 1948, requires transfer of all condemnation cases by the district courts to the Court of Eminent Domain "with the exception of the records of such cases already heard on their merits and submitted for resolution or judgment." But unless the parties agree to the contrary, our action in this case requires a new trial. The case therefore does not come within the recited exception, and must be transferred to the Court of Eminent Domain for further proceedings in that court.

The appeal of the Authority may be disposed of briefly. The first error is directed against the order of the court requiring the Authority to produce the deeds pursuant to which the Authority acquired by purchase three tracts of

land.  These deeds involved the sales which have persuaded us to reverse the judgment of the lower court.  Rule 34 of the Rules of Civil Procedure clearly authorized the district court to order the Authority to produce these public documents for inspection by Valldejuli.

The second error, divided into several parts, is directed to the weighing of the evidence by the lower court.  In view of the result we have reached, the weighing of the evidence must be done all over again.  We therefore think it inappropriate for us to discuss this error.

The judgment of the Tribunal of the District of San Juan will be reversed, and the case remanded with instructions to transfer it to the Court of Eminent Domain for further proceedings not inconsistent with this opinion.